IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

EASTERN DIVISON

| | | |
|---|---|---|
| AMANDA DAWN FILLINGER, | ) | CASE NO.5:20-CV-01653 |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| v. | ) | |
| | ) | MEMORANDUM OPINION AND |
| COMMISSIONER OF SOCIAL SECURITY, | ) | ORDER |
| | ) | |
| Defendant. | ) | |

## Introduction

Before me[1] is an action by Amanda Dawn Fillinger under 42 U.S.C. §405(g) seeking judicial review of the 2019 decision of the Commissioner of Social Security that denied Fillinger's 2017 application for disability insurance benefits.[2] The Commissioner has answered[3] and filed the transcript of the administrative proceedings.[4] Pursuant to my initial[5] and procedural[6] orders, the parties have briefed their positions[7] and filed

---

[1] The parties consented to my exercise of jurisdiction and the matter was transferred to me by United States District Judge Solomon Oliver, Jr. ECF No. 17.
[2] ECF No.1.
[3] ECF No. 12.
[4] ECF No. 13.
[5] ECF No. 7.
[6] ECF No. 14.
[7] ECF Nos. 16 (Fillinger), 20 (Commissioner), 21 (Fillinger reply).

supplemental fact sheets and charts.[8] The parties have met and conferred with the goal of reducing or clarifying the issues.[9] They have participated in a telephonic oral argument.[10]

For the following reasons, the decision of the Commissioner will be reversed and the matter remanded for further proceedings.

## Facts

Fillinger, who was age 28 at the time of the hearing,[11] has a high school education with some additional college,[12] has past relevant work as a meat stock clerk, and a composite job of cashier, waitress, and pizza baker.[13] She lives with her husband and their young son.[14] A 2017 consultative psychological examination found that she had average intelligence and memory, with average adaptive behavior, although somewhat impaired by general anxiety.[15] A personal function report completed in 2019 by her husband states, *inter alia*, that, due to migraines, which her husband asserts are frequent and severe, Fillinger can no longer drive nor stand for a long period and spends most her time alone in a dark room.[16]

---

[8] ECF Nos. 16, Attachments (Fillinger), 20, Attachment (Commissioner).
[9] ECF No. 22.
[10] ECF No. 25.
[11] Tr. at 17.
[12] *Id*. at 392.
[13] Tr. at 17.
[14] *Id*. at 393.
[15] *Id*. at 391-96.
[16] *Id*. at 268-75.

The ALJ found that she has the following severe impairments: migraines/severe headaches and pre-syncope/dizziness.[17] The ALJ further determined that Fillinger does not have an impairment or combination of impairments that meets or equals a listing.[18] To that point, in his brief paragraph on this issue, the ALJ stated that he specifically considered Listing 11.02,[19] which is for epilepsy but which, since epilepsy is not a listed impairment, is the listing the Social Security Administration directs be used as "the most closely analogous listing for determining whether a claimant's migraine condition is medically equivalent to a listing."[20]

In forming his conclusion that Fillinger does not meet or medically equal the requirements for Listing 11.02, the ALJ stated first that none of the state agency reviewers who evaluated this issue had opined that she met the listing.[21] Further, and without elaboration, he noted that Fillinger "had migraine headaches, but there was no indication of seizure activity."[22]

The ALJ then determined that Fillinger has an RFC for light work but with additional physical and mental limitations, including her avoiding "common migraine

---

[17] *Id*. at 12.
[18] *Id*. at 14.
[19] *Id*.
[20] *Jandt v. Saul,* 2021 WL 467200, at *5 (W.D. Ky. Feb. 9, 2021) (citations omitted).
[21] Tr. at 14.
[22] *Id*.

triggers such as extreme cold; extreme heat; humidity; loud noise; very bright light (defined as brighter than typical office setting); and fumes, odors, dust, gases, and poor ventilation.[23]

In forming this RFC, the ALJ initially considered Fillinger's own testimony. He observed that Fillinger has a medical history that includes migraines prior to the alleged 2014 onset date.[24] After 2014, the ALJ noted that Fillinger initially complained of headaches and/or migraines but then went through a period of several years where "the record shows little consistent treatment or complaints for chronic conditions."[25]

Beginning in 2017, Fillinger had examinations and/or treatment for migraines, but her "objective neurological findings remained unremarkable" and she reported some improvement.[26] In April 2018, she had a pain management consultation for "daily headaches" and also reported balance problems with light and sound sensitivity, although her neurological exam findings continued to be unremarkable.[27] In 2019, she began Botox treatment for migraines, which was "effective in reducing the number of severe migraines."[28]

The ALJ then cited the September 2017 opinion of the psychological consultative examination by Dr. Magleby,[29] which is noted above. The ALJ found Dr. Magleby's

---

[23] *Id*.
[24] *Id*. at 15.
[25] *Id.*
[26] *Id*.
[27] *Id*. at 16.
[28] *Id.*
[29] *Id.*

opinion persuasive in finding, *inter alia*, that Fillinger could understand and carry out instructions normally and complete multi-step tasks.[30] The ALJ also found persuasive the opinions of state agency psychological reviewers who opined that Fillinger had no more than mild mental limitations.[31] Although the ALJ found the opinions of the state agency medical reviewers persuasive, he found that unspecified "update evidence" established the need for additional postural and environmental limitations.[32]

In addition, the ALJ found unpersuasive the functional report from Fillinger's husband. To that point, the ALJ observed that Mr. Fillinger was not a medical professional "trained in identifying medical impairments and associated limitations."[33] He further noted that Mr. Fillinger's notes "did not document the substantial degree of limitations" that his opinion described.[34] The ALJ, however, did find the opinion of Fillinger's chiropractor to be persuasive in that he observed a normal ability to perform fine and gross manipulation as well as the ability to use upper extremities functionally.[35]

Finally, the ALJ found Fillinger's own functional assessment only partially consistent with the evidence, particularly the evidence that while she had headaches during much of the relevant period, treatment, including Botox and chiropractic manipulation,

---

[30] *Id.*
[31] *Id.*
[32] *Id.*
[33] *Id.* at 17.
[34] *Id.*
[35] *Id.*

provided improvement.[36] Moreover, the ALJ found that the time when Fillinger had little treatment, was "incongruent with the degree of dysfunction that she reported."[37]

After finding that Fillinger could not perform her past relevant work,[38] the ALJ, with the assistance of testimony from a VE, found that Fillinger could perform the duties of: ticketer, garment sorter, and folding machine operator, and further found that a significant number of jobs in all such occupations was available in the national economy.[39]

Accordingly, Fillinger was found not disabled.[40]

## Analysis

This matte is reviewed under the well-established substantial evidence standard, which need not be restated here. Further, the opinion evidence is considered under the newer rubric for such evidence which assesses its persuasiveness. That standard also need not be restated.

Fillinger in her brief asserts three issues for judicial review: (1) the ALJ erred by not finding that her anxiety and depressive disorder were severe impairments; (2) The ALJ erred by finding Jonathan Fillinger's functional report was unpersuasive, and (3) the ALJ erred at Step Five by failing to consider the effects of Fillinger's daily migraines.[41] In her

---

[36] *Id.*
[37] *Id.*
[38] *Id.*
[39] *Id.* at 18.
[40] *Id.*
[41] ECF No. 16 at 1.

reply brief she clarifies or reframes her argument as an assertion that the ALJ failed to appropriately analyze Fillinger's migraines under Listing 11.02.[42]

I begin by noting that SSR 17-2P[43] sets out the articulation requirements that must be met in determining if an individual has medically equaled a listing. That regulation states, in relevant part, that:

> [The] adjudicator is not required to articulate specific evidence supporting his or her finding that the individual's impairment(s) does not medically equal a listed impairment. Generally, a statement that the individual's impairment(s) does not medically equal a listed impairment constitutes sufficient articulation for this finding. An adjudicator's articulation of the reason(s) why the individual is or is not disabled at a later step in the articulation will provide rationale that is sufficient for a subsequent reviewer or court to determine the basis for the finding about medical equivalence.[44]

Here, the relevant analogous listing is Listing 11.02(B), or epilepsy characterized by dyscognitive seizures occurring at least one a week for at least three consecutive months despite adherence to prescribed treatment. Dyscognitive seizures are defined in Listing 11.00H1b as being characterized by alteration of consciousness without convulsions or loss of muscle control.

---

[42] ECF No. 21 at 2-3.
[43] 2017 WL 3928306 (S.S.A. March 27, 2017).
[44] *Id*. at *4; see also, *Willis v. Comm'r*, 2020 WL 193932, at *4 (E.D. Mich. April 22, 2020). I note that SSR 17-2P appears to be different from earlier Sixth Circuit case law that required the ALJ to "give an explained conclusion" for finding that a listing was not medically equaled. *Reynolds v. Comm'r*, 424 Fed. App'x 411, 416 (6th Cir. 2011). However, as was explained in *Jandt v. Saul*, 2021 WL 467200, at * 9 (W.D. Ky. 2021), construing SSR 17-2P together with *Reynolds* yields the standard that, although the ALJ need not articulate at Step Three, the ALJ must later provide "a sufficient explanation for a court to determine the basis for the unfavorable finding about medical equivalence."

In the context of migraine headaches, courts have found that it is not necessary to show that a claimant experienced "seizures" to establish that the claimant's migraines were medically equivalent to Listing 11.02.[45]"Instead, the evidence regarding the frequency and severity of the migraines must be considered in assessing whether a claimant's migraine impairment medically equals Listing 11.02."[46]To that point, the court in *Jandt* indicated that "the ALJ's focus should [be] on records … memorializing Plaintiff's statements regarding: her symptoms such as aura, the intensity and type of headache pain, nausea, photophobia, the need to lie down in a quiet dark room, medications prescribed and the duration and frequency of the headaches."[47]

Here, the record, as related by the ALJ, shows that Fillinger was complaining of "daily" migraine headaches in April of 2014, a complaint repeated the next month.[48]In early 2017, she had chiropractic treatment for "continued migraines."[49]In spring and summer of 2017 she had examinations "for intractable migraines."[50]In September 2017, she was treated at the emergency department for "weakness, pre-syncope and dizziness."[51]

By early 2018, she had chiropractic treatment for "migraines and neck pains," with the ALJ noting that an unquantified "improvement" was "noted regularly."[52]In April of

---

[45] *Jandt,* 2021 WL 467200, at **7-8 (collecting cases).
[46] *Id*.
[47] *Id*. at *10.
[48] Tr. at 15.
[49] *Id.*
[50] *Id*.
[51] Id.
[52] *Id*. at 16.

that year, Fillinger had a pain management consultation for "daily headaches" as well as "balanced problems along with light and sound sensitivity."[53] She began receiving Botox injections for her migraines, which, by 2019, were reported as "effective in reducing the number of severe migraines."[54]

That said, the June 2019 function report by Jonathan Fillinger[55] stated that the claimant's migraines are "so bad and so frequent" that cannot drive most of the time, cannot stand for long periods, cannot focus her eyes and "spends a lot of time alone in a dark room with no lights resting."[56]

Viewed as a whole, the record is unmistakable that at least from 2017 forward Fillinger was reporting, as did others who observed, examined or treated her, the presence of "chronic intractable migraines."[57] The chronology developed by the ALJ himself is clear on that as well. Yet, the ALJ's stated reason for why Fillinger does not medically equal Listing 11.02 – "there was no indication of seizure activity" [58] - is incorrect as a matter of law.[59] Further, the later portions of the ALJ's opinion, which should, according to the

---

[53] *Id*.
[54] Id. The reference to the relative effectiveness of Botox treatment seems to come from a September 2018 treatment note by Dr. Harold Goforth of the Cleveland Clinic Headache Center who noted that although Botox seemed to reduce the number of severe migraines, Fillinger was still having daily headaches of moderate to severe intensity. *Id*. at 502.
[55] *Id*. at 268-75.
[56] *Id*. at 268.
[57] *Id*. at 476 (Dr. Goforth note of April 16, 2018).
[58] Id. at 14.
[59] I note again that caselaw and SSR 19-4p "make it clear that evidence of seizure is not required to establish that migraines is not required to establish that migraines are medically equivalent to Listing 11.02." *Jandt*, 2021 WL 467200, at *7.

directive set out in *Jandt*, focus on "the frequency and severity of the migraines,"[60] and so serve to explain to a reviewing court the reasoning of why Listing 11.02 was not medically equaled,[61] instead show, as noted, a consistent record over years that Fillinger experienced frequent migraines, often described as daily, at a level of intensity that was no less than moderate and was often severe.

In short, the findings and reasoning of the ALJ here is not based on a correct understanding of the regulations as they apply to migraines and is further not supported by substantial evidence.

## Conclusion

For the reasons stated, the decision of the Commissioner is reversed and the matter remanded for further proceedings consistent with this opinion.

IT IS SO ORDERED.

Dated: March 30, 2022

Signed by:
 s/William H. Baughman Jr.
United States Magistrate Judge

---

[60] *Id*. at *8.
[61] *Id*. at **7-8.